## Thomas W. Snook v. Robert W. Davis and Another.

In replevin, the defense that the property was taken under legal proceedings against a third person claimed to be the owner thereof, is admissible under the general issue without notice.

By a written contract between plaintiff and one R., R. agreed to work for plaintiff in the sale of merchandise, in the store in which R. formerly carried on the same business; to take charge of said store, and do or cause to be done all. the work necessary to the profitably conducting said business; to sell such goods as should be placed there by plaintiff, keep books, be always ready to render an account; to contract no debts against plaintiff without special permission; to be liable per-, sonally to plaintiff for all bad debts he might contract in said business; to give up possession of the goods and store whenever required, and pay over the avails of sales; and plaintiff agreed to pay to R. all the profits on the sales of goods over and above ten per cent.; or, in other words, the plaintiff to receive from R. the cost and transportation, and all expenses that should accrue in placing the. goods in the store, and, in addition, ten per cent. on the cost of the goods and expense of placing them in the store, and at any time when plaintiff should wish to close the business, it should be at his option to take any remaining goods out of the store, or hold R. personally liable for the cost thereof and transportation; and the goods, and all sales, and credits given in the sale, were to be at the risk of R., and plaintiff was to be at no trouble or expense in any way growing out of the business, except the purchase of the goods; and should receive back in money from R., if he should require it, the cost and expense of transportation, and ten per cent. thereon. In an action of replevin by plaintiff for goods taken from the store under an execution against R., the circuit judge charged the jury that, by the terms of this contract, all the goods purchased by plaintiff under the same became the property of R. as soon as they were delivered into his posses-. sion, and that the legal effect of the contract was to constitute a sale from plain-.

tiff to R. of the goods purchased by plaintiff and delivered to R. pursuant to the contract, and rendered the goods subject to the claims of R.'s creditors. *Held,* That this charge was erroneous, and that, independent of any question of fraud, the contract did not have the effect to vest in R. the goods purchased and placed in the store by plaintiff.

The court can not say that this contract was fraudulent upon its face against the creditors of R., or conclusive evidence of fraud. Whether it was made in good faith, or intended to defraud, and whether any thing done or claimed to have been done under it was fraudulent or not, were questions of fact for the jury, depending upon the evidence outside of the instrument itself.

*Heard November 12th. Decided December 9th.*

Error to Macomb Circuit.

The action was replevin, brought by Snook against Robert W. Davis and Thomas Golby, for a quantity of merchandise. The defendants pleaded the general issue.

On the trial, the taking of the goods by defendants was admitted. To prove his right to the goods, plaintiff gave in evidence the following agreement:

"*This Agreement*, made the 8th day of April, in the year of our Lord one thousand eight hundred and fifty-three, between Benjamin Robertson, of the village of Mt. Clemens, Macomb county, Michigan, of the one part, and Thomas W. Snook, of said village aforesaid, of the other part, witnesseth as follows:

"The said party of the first part, for and in consideration of the compensation hereinafter specified, hereby agrees to work and labor for the said party of the second part, for and during the term and time that the said Snook may see fit or desire him to work in or about the said Snook's store in the village of Mt. Clemens, in which he is about to commence the sale of stoves, hollow-ware, tin and copper ware, &c., and in the same building where the said Robertson has heretofore carried on that business.

"The said Robertson hereby agrees to take charge of said store, and to do, or cause to be done, all the work necessary to the profitably conducting said business. He further agrees to sell the goods, wares, and merchandise, that shall from time to time be placed there by the said

Snook, in a prudent and faithful manner, and at a reasonable and fair profit; to keep all the books necessary in said business in a proper manner, posted as promptly as is usual for merchants; to be at all times ready and willing to make a full exhibit of the condition of the stock and business of said store, and to contract no debts against said Snook, without his express permission first obtained.

"The said Robertson hereby further agrees to keep said store, at all reasonable times, open and ready for customers; and to be liable personally to the said Snook for all bad debts that he may contract in the prosecution of said business, and to leave the possession of the said goods and premises whenever the said Snook may see fit to have him do so. The said Robertson further agrees to pay over to the said Snook the avails of all sales from said store, whenever he may be called on by the said Snook so to do; and to deliver to the said Snook all promissory notes and choses in action that may be received in the prosecution of said business.

" And the said Benjamin Robertson hereby further agrees, that, in case he fails faithfully to perform all the said agreements as hereinbefore specified, to forfeit all claims for compensation from and of the said Snook, for his said labor that he may bestow in and about said business as aforesaid.

"And the said Thomas W. Snook hereby agrees to pay the said Benjamin Robertson for his services, to be rendered as hereinbefore set forth, all the profits on the sale of said goods, over and above ten per cent.; or, in other words, the said Snook shall receive from the said Robertson the cost and transportation, and all expenses that shall accrue in placing the goods in said store, and, in addition to said costs and expenses, ten per cent. on the gross amount of cost of goods and expense of placing the same in said store; and at any time when the said Snook shall wish to close his said business, it shall be at his option to take any remaining goods out of said store, or hold the said Robertson person-

ally liable for the price of said goods, reckoned at cost and transportation.

"And it is mutually understood and agreed by the parties hereto, that the said goods, wares, and merchandise shall, at all times from the time they leave the place where they may have been purchased, be at the risk of the said Benjamin Robertson; and all sales and credits given in the sale of any of the said goods, wares, and merchandise shall be at the risk of the said Robertson; and that the said Snook shall be at no trouble or expense in any way growing out of said business, save the purchase of said goods; and that he shall receive back, in money, from the said Robertson, if he (the said Snook) requires it, the cost and transportation of said goods to the place where they are to be sold, and, in addition to that amount, ten per cent., as hereinbefore set forth.

"In witness whereof, we have hereunto set our hands, the day and year first above written."

"BENJ'N ROBERTSON."<br>"T. W. SNOOK."

The plaintiff also gave evidence tending to prove that, soon after this agreement was executed, the business therein contemplated was commenced, and from that time until the taking by the defendants, was carried on in the store designated, in Mt. Clemens, in accordance with the provisions of said agreement, and that the goods in question were a part of the stock purchased by plaintiff personally, or through Robertson as his agent, and on hand, for sale in said business.

The defense gave in evidence, under exception, a judgment in the United States District Court for Michigan, in favor of Messrs. Peckhams, against Robertson, in the year 1852, by virtue of an execution upon which the defendant Golby, as special deputy of Davis, who was United States marshall, took the goods as the property of Robertson.

Defendants also gave evidence tending to show, as they claimed, that the agreement before recited was fraudulent in

*fact,* as against the creditors of Robertson, and was intended
as a mere cover to protect the property of Robertson from
legal process in favor of his creditors.

The circuit judge charged the jury that, by the terms of
said agreement, all the goods purchased by the plaintiff under
the same, became and were the property of Robertson, as
soon as the same were delivered into his possession, and that
the legal effect of the agreement was to constitute, and it did
constitute, a sale from plaintiff to Robertson of the goods
purchased by plaintiff, and delivered to Robertson pursuant
to the contract, and rendered the goods subject to the claims
of said Robertson's creditors.     The plaintiff excepted to this
charge; and, the jury having found for defendants, brought
the case to this court for review on the exceptions.

*Eldredge & Hubbard,* and *S. T. Douglass,* for plaintiff in
     error :

1.   The evidence on the part of the defendants, of the
judgment and execution against Robertson, and the levy by
virtue of the execution, &c., was inadmissible under the
general issue, without a special notice. — 2 *Greenl. Ev.* § 560,
563, 564;   *Pierce v. Vandyke,* 6 *Hill,* 613;   *Ely v. Ehle,* 3
*Comst.* 510, 511; *Demick v. Chapman,* 11 *Johns.* 132; *Comp.
L.* §§ 5005, 5028, 5030, 5034.

2.   The court erred in the instruction to the jury, as to
the legal effect of the contract between Snook and Robert-
son.

If the court assume the parties to have intended what is
expressed on the face of the contract, as they must do, the
transaction is clearly not within the purview of any of the
statutes respecting fraudulent conveyances and contracts, nor
within any rule of the common law which makes one man's
property liable for the debts of another. — *Forbes v. Marsh,*
15 *Conn.* 384; *Howard v. Sheldon,* 11 *Paige,* 560, 561; *Calk-
ins v. Lockwood,* 16 *Conn.* 276;   *McOmber v. Parker,* 14
*Pick.* 497; *Patton v. Clark,* 5 *Pick.* 4; 11 *Pick.* 473.

SNOOK v. DAVIS.

The charge of the court can not be sustained as even substantially correct, unless the court were authorised to say, as matter of law, looking at the contract alone, that the goods purchased by Snook, under it, were Robertson's goods, and that the provision between them, that Snook should remain the owner, was intended to hinder, delay, or defraud Robertson's creditors.

No such intent can be deduced from the face of the contract. Its provisions are perfectly consistent with the honesty and good faith of both parties.

It is true that this arrangement might have been resorted to for the real purpose of protecting Robertson's property from his creditors; but whether it was resorted to for that purpose or not, must, of necessity, depend upon extraneous evidence, and would be a question of fact for the jury.— *Comp. L.* § 3201; 1 *Smith Lead. Ca.* 41, 68 *to* 72, *et seq.*; 1 *Am. Lead. Ca.* 37, 39; *Jackson v. Dean,* 1 *Doug. Mich.* 519.

If adjudged fraudulent as giving Robertson a fictitious credit, it would only be so as to subsequent creditors, because they alone could be defrauded by it.—1 *Am. Lead. Ca.* 36, 40.

*Walkers & Russell,* for defendants in error:

1. At common law, replevin could only be brought for the tortious taking of property—not for its mere detention; and the general issue was the narrow one of *non cepit*—which admitted the property of the plaintiff, and merely put in issue the taking. The property of the plaintiff could only be questioned by an avowry or special plea.—*Ham. N. P.* 463, 465; 1 *Chit. on Pl.* 499.

The first statute alteration of this rule of pleading was in 1839—which provides that the general issue shall be joined on a plea of not guilty.—*S. L.* 1839, *p.* 230.

In 1841, it was farther provided that, if either party had a lien or special property in the articles replevied, that fact could be proved under the general issue.—*S. L.* 1841, *p.* 54.

Under those statutes, it has been decided by this court that, on the plea of not guilty, every fact stated in the plaintiff's declaration, necessary to sustain the action, was put in issue, and not the detention of the property merely.— *Loomis v. Foster*, 1 *Mich.* 165.   •

The present statute is still more clear and definite, and provides that the general issue puts in issue not only the detention of the property, but the property of the plaintiff therein, and his right to the possession thereof at the commencement of the suit.— *Comp. L.* § 5030.

Under this provision, we submit there can be no question of defendant's right to put in any evidence proving that he rightfully detained the property; for, if he *rightfully* detained it, then the plaintiff had no right to the possession at the commencement of the action; and this fact is expressly put in issue by the pleadings.

2. Possession is *prima facie* evidence of ownership; and when the owner of goods and chattels parts with their possession and control, the presumption is that the title also has passed.   There are cases, however, under a contract in the nature of a sale, where possession is given, that the title does not pass.

1st.   There are conditional sales, where, by the clear provisions of the contract itself, the title is not to pass until some contingency happens which is made a condition precedent.   But a sale where the vendee is clothed with the power to sell to others at discretion, can not, from its very nature, belong to this class; nor is there here any such condition.— 1 *Pars. on Cont.* 450; *Chit. on Cont.* 391; *Coghill v. H. & N. H. R. R. Co.* 3 *Gray*, 545; *Heath v. Randall*, 4 *Cush.* 196; *Brewster v. Baker*, 20 *Barb.* 364.

2d.   There is a class of sales known as contracts for "sale and return," where the vendee has a right to sell the goods, and if not sold, to return the same within a reasonable time.— 2 *Kent*, 642 (497); *Story on Sales*, § 249; *Moss v. Sweet*, 3 *Eng. L. & Eq.* 311 *note*; *Meldrum v. Snow*,

9 *Pick.* 441; *Morss v. Stone*, 5 *Barb.* 516; *Eldridge v. Benson*, 7 *Cush.* 483.

Here, clearly, no such right existed in Robertson. The sale was unconditional and complete.

Robertson is clothed with every right and power of owner —he could sell the goods in his own name, to whom he chose, and upon what terms he chose; and the risk was all his own. He, and he alone, has the charge and possession of them. He had no right to return a dollar's worth of them to Snook. ' They were entirely at his risk.—2 *Kent*, 634 (472); *Buffum v. Merry*, 3 *Mason*, 478; *Wing v. Clark*, 24 *Me.* 392; *Pleasants v. Pendleton*, 6 *Rand.* 483; *Broyles v. Lowry*, 2 *Sneed*, 22; *Willis v. Willis*, 6 *Dana*, 49; *Crawford v. Smith*, 7 *Dana*, 59; *Tarling v. Baxter*, 6 *B. & C.* 360; *Story on Bail.* §§ 438, 439; *Chit. on Cont.* 375 a; 1 *Pars. on Cont.* 440.

It is undoubtedly true, that, by a special contract for a proper consideration, one may assume the risk of another's property, as is done in the contract of insurance; but here there is no such pretense. The risk of Robertson simply illustrates and proves his ownership. Snook carefully relieved himself from all liability as owner.

That provision in the contract, that Snook might, at his option, close the business and take the goods on hand into his possession, or treat Robertson as his debtor, in no way militates against the position that Robertson was the owner of the goods.

This right to take the goods is a mere executory and personal agreement, which might operate by way of an estoppel, as a license on the part of Robertson, *if executed while the goods were in his hands;* but it was not a condition (if we may so speak) *running with the goods*, and binding them. No lien whatever is given upon the goods. Over the goods, Robertson's power was perfect and unlimited.

Then, too, the true construction of the provision is, that

the power can only be exercised in case Robertson has not paid for the goods, and that such payment he had a right to make any time before its exercise. It is settled law, that, when the owner of a chattel delivers it to another, under a promise that he will return the property *or* pay for it, *or* return other property, it is a sale, and the title passes.— 2 *Kent,* 754 (589); *Story on Bail.* § 439; *Holbrook v. Armstrong,* 10 *Me.* 30; *Dearborn v. Turner,* 16 *Me.* 17; *Buswell v. Bicknell,* 17 *Me.* 344; *Perkins v. Douglass,* 20 *Me.* 318; *Hurd v. West,* 7 *Cow.* 752; *Buffum v. Merry,* 3 *Mason,* 478; *Marsh v. Wickham,* 14 *Johns.* 167; *Smith v. Clark,* 21 *Wend.* 83; *Foster v. Pettibone,* 3 *Sel.* 433; *Depew v. Keyser,* 3 *Duer,* 335.

CHRISTIANCY J.:

The first error assigned raises the question, whether the justification by the defendants under the judgment and execution against Robertson, was admissible under the general issue without notice. For myself, I am strongly inclined to the opinion that it was not, and that notice of the defense should have been given. But my brethren all hold this defense admissible without notice; and as we all agree in the result upon another branch of the case, I yield to their opinion on this point, and abstain from discussing it. The result is, that there is no error in the ruling of the court below upon this point.

The other assignment of error raises the question, whether the judge erred in charging the jury that, "By the terms of the written contract between the plaintiff and Robertson, all the goods purchased by the plaintiff under the same became and were the property of Robertson as soon as the same were delivered into his possession, and that the legal effect of the contract was to constitute, and that it did constitute, a sale from plaintiff to Robertson of the goods purchased by the plaintiff and delivered to Robertson pursuant to the contract, and rendered the goods subject to the claims of Robertson's creditors," &c.

. This charge relates *only to goods purchased by the plaintiff*, and delivered to Robertson under the agreement; it is entirely distinct from, and independent of, any question which might have been raised whether any of the goods so purchased by the plaintiff were fraudulently purchased with the money or capital of Robertson, to shield them from the creditors of the latter; or whether any of the property claimed by plaintiff had been purchased by Robertson independent of the agreement, and fraudulently cloaked under it; and this charge rendered the question of fraud between plaintiff and Robertson, as depending upon the parol evidence given in the cause, wholly immaterial; and no such question of fraud appears to have been submitted to the jury. If, therefore, the legal effect of the contract, independent of any extrinsic evidence, was not such as to vest the property in Robertson, as stated by the charge, the judgment must be reversed.

Independent of any question of fraud raised by extrinsic evidence, did this contract have the effect to vest in Robertson the property in the goods purchased and placed in the store by the plaintiff in pursuance of its terms, and did the contract constitute a sale of such goods, as stated by the charge? We think it did not; but that, construing it with reference only to what appears upon its face, it was substantially a contract by which the plaintiff undertook to furnish goods to Robertson, the latter to sell them, and to carry on the business for plaintiff, and in his store, so long as the plaintiff chose to employ him in that capacity, and that Robertson was to receive for his compensation all that could be made from the business over ten per cent., after paying cost and transportation; that Robertson was to be responsible for any bad debts he should make in the business, as in the case of a *del credere* commission, plaintiff having the right to close the business at any time, and to take all the goods, or such of them as he should see fit, with the undertaking on the part of Robertson to purchase the goods on hand, or any part of them, as the plaintiff should elect, at cost and transportation; and that

the goods, during the continuance of the business, and while in the course of transportation, should be at the risk of Robertson.

It is contended that the risk is an incident of ownership, and therefore conclusive of the ownership of the goods by Robertson; but though a usual, it is by no means an inseparable incident—it is only so in the absence of contract to the contrary. It is perfectly competent for a clerk, bailee, or any other person dealing in any way with the property of another, by contract to take the risk upon himself, as Robertson did in this case.

It is very possible if the question had arisen between the vendors of these goods on the one hand, and Snook and Robertson on the other, in an action to recover against the two latter the purchase price of the goods, Robertson might have been held liable to such creditors as a partner. But no such question is involved here. The question here presented on the construction of the contract, is, whether by the provisions of the contract itself, as between the parties to it, the property vested in Robertson. We think the legal effect of the contract, without reference to extrinsic evidence, was not a sale, though it might become such at the option of plaintiff, at any time when he saw fit to close the business.

But here the question may arise, whether the contract, upon its face, is such that the court can say, as matter of law, without evidence *aliunde*, that it was a fraud upon creditors, or conclusive evidence of fraud.

Neither the contract as a whole, nor any stipulation of it, is in any manner inconsistent, with entire honesty of purpose and fair dealing. It might easily be carried into full effect, in letter and spirit, without any fraud upon creditors or other persons; and, in fact, if carried into full effect according to the fair and natural import of its terms it could not well operate as a fraud upon creditors; as the goods were to be purchased and paid for, not with the money or capital of Robertson, but of the plaintiff. There is not then any

thing upon the face of the contract, which can enable the court to treat it as fraudulent towards creditors, or as any evidence that property of Robertson was shielded by it to their injury.

It is, however, easy to see that such a contract might be made a very convenient cloak of fraud upon creditors; but this would not be in pursuance, but only under pretence of the contract. Thus, by concert between them, the plaintiff might have purchased goods with money furnished by Robertson, or Robertson might purchase himself, place them in the store, and seek to hold them under pretence of the contract; and in a great variety of ways the contract (like most other contracts, and perhaps more than most others), was capable of being perverted to a fraudulent purpose. But whether it was so perverted or not—whether the contract was in good faith, or intended to defraud—whether any thing done, or claimed to be done, under it was fraudulent or not—were questions of fact for the jury, depending upon evidence outside of the instrument itself, the facts and circumstances leading to the contract, the situation and conduct of the parties in reference to the subject-matter, and all other circumstances from which the intent might be inferred, and the nature of the whole transaction ascertained.

There was evidence of this character in the present case, as appears by the bill of exceptions, and from which the jury might or might not have found a fraudulent intent, and from which they might have determined the question of ownership of the property. But the effect of the charge was to withdraw all such evidence from the consideration of the jury, and to make the whole controversy turn upon the construction of the contract as a question of law. For these reasons, the judgment must be reversed and a new trial granted.

The other Justices concurred.