## William Hale v. Silas M. Holmes and others.

A bill in Chancery cannot be sustained to compel a vendor to receive his own paper on the contract of sale, when he has not agreed to do so, and the purchaser has not bound himself to take and pay for the property.

Nor will equity compel a set off of the vendor's debt on the contract of sale, in such case, since there is no contract on the part of the purchaser against which to allow it. It is at his option to purchase the property or not; but, if he do so, he must pay for it in accordance with the contract of sale.

The insolvency of one party, even in the case of mutual credits, is not of itself sufficient to authorize an equitable set off.

Where a party receives a compromise note from his debtor, with collateral security, agreeing that if paid when due the original debt shall be discharged, otherwise of force, and after the compromise note comes due and is unpaid, sells and transfers the same with the collaterals and the original debt, he thereby confirms the compromise; and, the purchaser cannot claim the amount of the original debt on the ground of forfeiture of the compromise agreement before he purchased.

And, where the collateral security in such case was the note of the purchaser, which became due before the compromise note, and was relied upon to pay the compromise note—*Held*, that the effect of the purchase was a payment of the compromise note by the said note of the purchaser, and that he had no claim, at law or in equity, upon the original debt.

*Heard January 5th. Decided January 9th.*

Appeal from Wayne Circuit in Chancery.

From the pleadings and proofs, it appears that on May

13th, 1858, the defendants, composing the firm of Holmes & Co., were indebted to Waldo, Barry & Co., of New York, in the sum of $5,576 19, besides interest, upon four promisory notes; and being embarrassed in their circumstances, entered into an agreement with them for a compromise of the demand for $2,949 97, for which amount they gave their note at eight months, and turned out as collateral security to it, a note against complainant of $2,-500, dated February 15th, 1858, payable six months after date, and secured by mortgage. For this compromise note and collateral security, Waldo, Barry & Co. gave a receipt, in which they agreed that if the compromise note was paid at maturity, the four original notes and the security were to be given up, but otherwise to remain in full force.

Previous to this time, on January 16th, 1858, complainant made a bargain with defendants for a mortgage they held upon the furniture of the Russell House, Detroit, given by W. H. Russell, to secure $16,000; and they gave complainant a writing in which they promised that on his paying $9,000 in four equal semi-annual instalments, they would assign him this mortgage. Complainant paid the first of these instalments, but did not pay the second when it came due, nor his note of $2,500, so turned out to Waldo, Barry & Co.; nor did defendants pay their compromise note when it matured.

On December 21st, or 22d, 1858, one of the members of Holmes & Co. called upon Waldo, Barry & Co., and stated to them that, in consequence of complainant failing to make his payments, the former were not able to meet their compromise note, and asked W. B. & Co., to wait upon them for thirty days longer. Holmes & Co., claimed that this request was assented to, but this was denied by W. B. & Co.

January 12th, 1859, complainant called on Waldo, Barry & Co., and said he had not been able to pay his note when it matured, but that a friend would furnish him the money

to buy up the Holmes & Co. notes, and the securities; and proposed to make the purchase.    This was assented to by W., B. & Co., and on complainant paying $3,000 therefor, the four original notes, together with the compromise note and the collaterals, were transferred to complainant by an instrument in writing, "subject to all the rights and equities in favor of Holmes & Co., in the hands of said Hale and his assigns as they" were "or would be in" the hands of Waldo, Barry & Co., if they "had retained them instead of selling them to said Hale." In this writing was set out a copy of the compromise agreement with Holmes & Co. Waldo, on being subsequently inquired of by Holmes & Co. why this was done, replied that "Hale had told them he could keep Holmes & Co. out of their money for two years, and he would not be bothered any further with it."

January 24th, 1859, Hale called on Holmes & Co., and offered to pay the amount due towards the purchase of the Russell chattel mortgage, by applying the same on the said four original notes of Holmes & Co., which the latter refused. He then filed his bill in chancery, alleging the insolvency of Holmes & Co., and praying that they be decreed to apply on said purchase the amount of said four notes, or so much as would be necessary to satisfy the instalments past due on said purchase; and that they be enjoined from proceeding to collect such chattel mortgage.

The Circuit Court made decree substantially as prayed by complainant, applying on said four notes complainant's note of $2,500, and the amount past due on said contract for the purchase of the chattel mortgage.    Defendants appealed.

*W. Gray*, for defendants:

The compromise agreement was at an end, and the four original notes in full force, on the failure to pay the compromise amount. If Waldo, Barry & Co., or Hale as assignee, did not return the collaterals, the most Holmes & Co. could claim would be that they be applied at their

face, upon the original indebtedness. Retaining and apply-
ing them does not continue the compromise agreement. —
*McClung v. Lyster*, 3 *Green* (*Iowa*) 182, 185. It would
be a useless ceremony for Hale to return to Holmes & Co.
his own one note which they would again have to restore.

*G. V. N. Lothrop*, for defendants:

Hale, by his own wrong in not paying his note, aided
in producing the default of defendants to pay their compro-
mise note. And equity will not permit him to take advan-
tage of the default. — 2 *Story Eq. Juris.*, § 1304; 22 *Conn.*
513; 21 *Vt.* 469.

The condition in the compromise agreement was in the
nature of a penalty to secure the payment of the com-
promise amount. Equity will not aid in the enforcement
of a penalty: — 2 *Story Eq. Juris.* §§ 1319. 1321; 4 *Johns.
Ch.* 415; 22 *Conn.* 513; 21 *Me.* 251; 2 *Johns. Ch.* 526:
but will ordinarily give affirmative relief against forfeitures
depending on time merely: — 23 *Vt.* 576; 2 *Barb.* 37; 29
*Me.* 351; 8 *Paige* 425; 6 *Wheat.* 528; 11 *Paige* 353; 4
*Scam.* 202. Equity gives relief against conditions prece-
dent and subsequent, and will not, by an oppressive and
unconscientious advantage taken under them, suffer a right
to be defeated. — 2 *Conn.* 299; 1 *Edw. Ch.* 394; *Wal. Ch.*
405; 1 *Fost.* 149; 29 *Vt.* 358; 4 *R. I.* 225. Delay may
amount to a waiver of condition — 32 *Me.* 394; 33 *Eng. L. &
Eq.* 133. Or acts inconsistent with rescision by the party
who has a right to rescind. — 28 *Miss.* 114; 12 *Barb.* 440.
Waldo, Barry & Co. could not abandon the compromise,
and still hold and sell the compromise securities. — 13 *Ill.*
611; 4 *Fost.* 278; *Ibid.* 282; 8 *Paige* 606; 2 *Hill* 288;
5 *Hill* 390; 5 *Barb.* 319; 3 *E. D. Smith* 269; 34 *N. H.*
556; 4 *Mich.* 508.

This was not a case for equitable set off. — 2 *Story Eq.
Juris.* § 1435; 2 *How.* 390; 27 *Ala.* 507; 1 *Cr. & Ph.* 161;
10 *Paige* 369; 2 *Barb.* 589; 5 *Mason* 201; 2 *Sumn.* 628.

MARTIN CH. J.:

In January, 1858, the defendants held a mortgage of Wm. H. Russell, upon certain personal property in the Russell House, in Detroit, to secure the payment of $16,-000. This mortgage they agreed to assign to Hale upon his payment to them of $9,000, in four equal installments, at six, twelve, eighteen and twenty-four months; but took no contract from Hale to make such payment. Their obligation to assign the Russell mortgage was dependant upon the prompt payment by Hale of the several installments above mentioned.

Hale paid the first installment, but made default upon the second, as the defendants claim; and they are about to take possession of the property and foreclose the mortgage for that reason.

Hale files this bill to restrain such foreclosure, and for specific relief; claiming that he holds liabilities of the defendants to a much larger amount than is due them, which, or so much as is necessary, he is entitled in equity to have allowed as payment towards the purchase of the Russell mortgage, and to prevent the threatened forfeiture of his right to purchase it. This claim of right is based upon the alleged insolvency of the defendants.

Whether we regard the bill as one filed to relieve against a forfeiture of the agreement, or to secure an equitable set off (and both grounds were taken upon the argument), it can not be sustained. In a variety of cases, as where one is prevented by unavoidable accident, or by the wrongful act of the other party, from making payment, or when the principal amount of the contract price has been paid, and the like, it is true that a court of equity will interfere to relieve against a forfeiture; but never where such relief can only be afforded by compelling a party to receive his own obligations, when the agreement contains no mutual promises, and where such interference would be to vary the terms of the contract forfeited.

MICH. 8—D

Nor is this a case in which equity will interfere to compel a set off. No set off can exist at law, because no contract upon the part of Hale exists against which to allow it. There is nothing but the offer of Holmes & Co. to convey, upon the payment of $9,000 in certain fixed installments, the debt and mortgage of Russell for $16,-000. The option remained with Hale to purchase it or not, but if he would, he must do so according to the terms of such offer. There is no mutual credit, and insolvency alone is insufficient, even in a case of positive indebtedness, to authorize an equitable off set. This we expressly held in *Lockwood v. Beckwith*, 6 *Mich.* 167.

But the case itself, as developed by the pleadings and proof, is not one entitling the complainant to any relief.

Whether the agreement by Waldo, Barry & Co., with the defendants, for the compromise of the latter's indebtedness, might have been forfeited by the former or not, is wholly immaterial under the facts now existing, and it is also immaterial whether they agreed or not to extend the time for payment of the compromise note. When the latter note was given, the defendants placed in the hands of Waldo, Barry & Co. the promissory note of this complainant for $2,500, together with a mortgage held as collateral security for its payment, to be held by Waldo, Barry & Co. as collateral security for the payment of such compromise note. This note of the complainants was past due when the compromise note became due. When the second installment under the defendants' agreement with the complainant was about falling due, and upon which the defendants relied (and this Waldo, Barry & Co. evidently knew) to take up their compromise note, we find Hale in New York negociating for the purchase of the defendants' paper in Waldo, Barry & Co.'s hands, and obtaining it under what savors very strongly of a threat. He knew that they, as well as the defendants, relied upon his payment of this installment to take up the compromise note;

HALE v. HOLMES.

and the extraordinary benefits offered to him in the agreement of the defendants, might well induce them to rely confidently upon it. When therefore he told Waldo, Barry & Co. that "he could keep defendants out of the money two years," they undoubtedly became satisfied that the most they could hope for was the amount of the compromise note, secured by Hale's obligation. They therefore sold to Hale such note, for the sum of $3,000, and transferred to him the four notes which were to be satisfied by its payment, and the securities, viz. Hale's note and the mortgage held as collateral to it. This was the real transaction as understood by the parties, if we are to believe Waldo, and so the written assignment executed by them must be interpreted. Hale, then, never purchased the notes covered by the compromise note, so as to acquire the right to demand payment of them; as by selling the compromise note and surrendering to him the security deposited to ensure its payment only, and not that of the four notes, they confirmed the compromise. The effect of the transaction therefore is simply this: By taking up his own note and security, he cancelled them; and what he claims to be a purchase of the compromise note, is in reality a payment of his note which secured it. If he has any claim upon the defendants, it is only for the difference between the amount due upon his note, and the amount of the compromise note: but with this question we have no concern. He never acquired any claim against the defendants by procuring the four notes transferred with the compromise note, which he can enforce either at law or in equity. They were paid by the payment of his note in the manner indicated.

The decree of the court below must be reversed, and the bill dismissed, with costs of this court and of the court below.

MANNING, and CAMPBELL JJ., concurred.

CHRISTIANCY J., was absent.