WARREN D. KINNEY, FRANKLIN B. ADAMS, AND JOHN IHLING v. LESTER A. TABOR AND ORRIN ROBINSON.

[See 49 Mich. 247, 52 Id. 389.]

*Set-off—If claim belongs to party seeking to set it off when suit is commenced —After-assignment or sale will not bar such right—Claims must be mutual—So held, where independent claim of one copartner against the firm was sought to be applied on amount due from him to the firm, in equity suit for an accounting.*

January 16, 1871, defendant Robinson *leased* to complainants the undivided one-half of a manufacturing establishment owned by him, including the land on which it stood, for an agreed yearly rental, and in the same agreement sold complainants one-half of the stock on hand. The agreement contained other stipulations, providing for a continuance of the business by complainants and defendant as copartners.

March 3, 1873, complainants filed a bill for a partnership accounting, pending which, and on March 17, 1874, they sued defendant for goods sold to him, in which suit he set off the rent due under said contract, and recovered a judgment for a balance of $607.54, which was affirmed in the Supreme Court, January 15, 1884 (52 Mich. 389), the Court holding that the covenant to pay such rent was *independent* of the *partnership* provisions of the agreement. Complainants then filed a supplemental bill to restrain the collection of the judgment, and to compel defendant to set off the same against the amount found their due on the partnership accounting.

March 23, 1874, defendant Robinson, being indebted to his co-defendant, an attorney at law, in the sum of one hundred and fifty dollars, had retained him to defend said *suit at law*, and in order to pay him said debt, and for defending said suit, gave him a written assignment of the items of his set-off and of any judgment he might obtain; and on April 21, 1883, settled with said attorney, and assigned him the judgment so recovered as aforesaid against complainants.

*Held,* that as defendant owned the claim for rent at time suit was commenced against him, he was not prohibited by the statute (How. Stat. § 7365, subd. 4) from interposing it as an offset.

*Held,* further, that the *real* difficulty consists, not only in the fact that the question has been litigated in the *lawsuit,* but in the want

of *mutuality* between the demand due *to* Robinson and the *unliqui-dated* demand claimed to be due *from* Robinson to complainants; and that the bill of complaint was properly dismissed.

Appeal from Van Buren. (Mills, J.) Argued July 6 and 7, 1886. Decided July 21, 1886.

Supplemental bill to restrain the collection of a judgment at law, and compel the owner to set off the same against the amount claimed by complainants on a partnership accounting. Decree dismissing bill affirmed. The facts are stated in the opinion.

*George W. Lawton* (*Howard & Roos*, of counsel) for complainants.

*L. A. Tabor* (*Henry F. Severens*, of counsel), for defendants.

CHAMPLIN, J. The court below entered a decree dismissing the bill of complaint, and complainants have appealed to this Court.

They have printed, as a part of the record, the opinion filed by the circuit judge, Hon. Alfred J. Mills, before whom the cause was heard. It covers the questions raised by the record so completely that I adopt it as my own. He says :

" This litigation arises out of the partnership relations existing between the complainants and the defendant Robinson, and the bill is in the nature of a supplemental bill; the particular relief prayed being supplemental and contingent upon that awarded in the case of *Kinney, Adams & Co.* against *Orrin Robinson*, just decided.[1]

" The bill of complaint in *that* case was filed March 3, 1873, and the defendant's answer on the twenty-fourth of March, 1873. The object of that bill, in brief, was to wind up the copartnership dealings between the parties, and to obtain an accounting thereof. The business dealings of the parties were carried on pursuant to an agreement in writing, which

---

[1] This decree found an indebtedness of $2,070.33 due from defendant to complainants.

has been referred to particularly in that case, and which should now be considered as a part of this opinion, because reference to it will be necessary to an understanding of the questions involved."

[The agreement reads as follows:

" *This agreement*, made this sixteenth' day of January, one thousand eight hundred and seventy-one, between Orrin Robinson, of the village of Lawton, Van Buren county, and State of Michigan, of the first part, and Kinney, Adams & Co., consisting of Warren D. Kinney, John Ihling, and Franklin B. Adams, of the State, county, and village aforesaid, of the second part, *Witnesseth*, that the said Orrin Robinson, in consideration of the covenant on the part of the party of the second part hereinafter contained, doth covenant and agree to and with the said Kinney, Adams & Co. to rent or lease to them the full, equal, and undivided one. half of lot No. (5) five, block No. (1) one, Dodge's addition to the village of Lawton, together with the building, machinery, tools, patterns, and everything thereto belonging or in anywise appertaining, and together with all territory (consisting of Cass, Berrien, St. Joseph, and Van Buren counties) for the manufacturing and sale of the revolving mould board plow and other agricultural implements. and shop work, etc., for two years from date hereof, for the sum of two hundred and fifty dollars, payable at the end of the first year, and three hundred dollars for the second year, payable at the end of the year.

" Said Orrin Robinson to put in his time, Kinney, Adams & Co. to put in equal time, and run the foundry and shop for the time specified to the best advantage; the said Kinney, Adams & Co. to buy of Robinson one-half of the stock now on hand at cost, and the said Robinson, at the end of two years, to buy of Kinney, Adams & Co. the one-half of what stock there is on hand then, at cost; the said Kinney, Adams & Co. to furnish capital, along as the same may be needed, to the amount of two thousand dollars, and at the end of the two years to draw out the amount of capital put in by Kinney, Adams & Co.; the said Orrin Robinson to pay Kinney, Adams & Co. interest at ten per cent. per annum on one-half put in, and divide the profits, if any, equally between the said Robinson and Kinney, Adams & Co.

"If any new machinery or tools, etc., are put in the shop, such tools and machinery to belong equally to the said Orrin Robinson and Kinney, Adams & Co. at the end of the two years.

"Kinney, Adams & Co. reserving the right, and the said Orrin Robinson agrees to sell Kinney, Adams & Co. the full, equal, and undivided one-half of lot No. (5) five, block (1) one, Dodge's addition to the village of Lawton, together with all the hereditaments and appurtenances thereto belonging, with all that reverts to him at the expiration of this lease, for the sum of twenty-five hundred dollars, payable in three annual payments, with interest, provided Kinney, Adams & Co. conclude to buy the property at the end of the first year, and in case they do buy at that

time, then this lease, for the second year, to be null and void and of no effect; Kinney, Adams & Co, reserving the right to buy or not, as they may elect.              "ORRIN ROBINSON.

"WARREN D. KINNEY.

"JOHN IHLING.

"FRANKLIN B. ADAMS."]

" On March 17, 1874, Kinney, Adams & Co. commenced a suit in the circuit court for this county to recover against the defendant Robinson a sum claimed to be due them from him for various articles of hardware furnished by them to him in 1870, 1871, and 1872.

" On March 31, 1874, Robinson appeared in the case by Lester A. Tabor, his attorney, and pleaded to the plaintiffs' declaration the general issue, and gave notice thereunder of set-off, which consisted in part in a claim for rent of the undivided one-half of lot number 5 of block 1 of Dodge's addition to the village of Lawton, for the years 1871 and 1872, being the premises occupied by the firm of O. Robinson & Co. in carrying on their business under their contract of copartnership.

" By the terms of the contract above referred to it was provided that Kinney, Adams & Co. should pay to Robinson, as rent for the undivided half of these premises, $250 at the end of the first year, and $300 at the end of the second year; and it was claimed that the covenant to pay these sums as rent was independent of the other covenants contained in the agreement, and that the amount due thereunder was available to Robinson as a set-off as against the plaintiffs' claim.

" The Supreme Court finally held this to be the law, and the defendant recovered, as against Kinney, Adams & Co., on account of his set-off over and above the plaintiffs' demands, a judgment for $607.54, upon the twentieth day of April, 1883.

" Upon the affirmance of that judgment by the Supreme Court, on January 15, 1884,[1] Kinney, Adams & Co. filed the original supplemental bill, so called, in this case, praying an injunction against the defendant Robinson, restraining him from the collection thereof until the further order of the court; alleging his insolvency, the pendency of the chancery suit between themselves and Robinson to settle their copartnership dealings; claiming that upon the decision of that case it would be decreed that Robinson was indebted to them

---

[1] See 52 Mich. 389.

in a sum much greater than the amount of his said judgment; that the rent for which the judgment was recovered had been, in the course of the copartnership dealings, paid; and praying that he might be compelled to set off his judgment as against the amount to be decreed them against him.

"Upon the filing of this bill, on the seventeenth day of January, 1884, a restraining order, with an order to show cause upon the defendant Robinson, was entered, and on the twenty-sixth day of January, 1884, after hearing counsel for the respective parties, an order was made directing the issuance of an injunction as prayed by complainants.

"The defendant Robinson filed his answer on the nineteenth day of February, 1884, and by it, as well as upon the hearing had upon the order directing Robinson to show cause, the general equities of complainants' bill were denied, and it was claimed that on the twenty-third day of March, 1874, Robinson was justly and legally indebted to Lester A. Tabor in the sum of $150 on an account then and there stated and agreed upon, and that on that day, in order to properly defend the action at law brought by Kinney, Adams & Co., and then pending, he duly employed Mr. Tabor as his attorney in that suit, and agreed to pay him $25 as a retainer fee therein, and also any and all reasonable fees for his services in such action; and that on that day, in order to pay and satisfy such indebtedness and retainer, and such future services, expenses, and disbursements as his said attorney might render and expend in that suit, he duly, and by writing under his hand, assigned to Mr. Tabor all his interest in the several items set up by him as his set-off in said action, and also any judgment that might afterwards be rendered in his favor therein; and that Mr. Tabor then and there agreed that he would conduct said cause to its final determination, paying for the defendant therein all expenses and disbursements connected therewith; and that afterwards, and on the twenty-first day of April, 1883, he had a settlement with Mr. Tabor for his services, expenses, and disbursements, which amounted to a sum equal, or about equal, to the amount of said judgment in said cause, and that, in order to satisfy and pay the same, he again, by writing under his hand, duly assigned to Mr. Tabor all his right, title, and interest therein; and that thereafter, and after the filing of the complainants' bill of complaint, the complainants received from Mr. Tabor notice of such assignments.

"After the issuing of the preliminary injunction, which, by its terms, enjoined the collection of the said judgment,

not only by Robinson but also by Tabor, he applied to the Supreme Court for relief by way of prohibition, which that Court ordered unless he should be made a party to the litigation. Thereupon the complainants amended their bill, and made Mr. Tabor a party defendant. His answer was filed in due time.

"The *bona fides* of the said assignments to the defendant Tabor are not questioned, but it is insisted that he took such assignments *pendente lite*, and subject to complainants' equities.

"The defendants contend that the assignments were not taken subject to any such equities as those claimed by the complainants, and that the complainants are not entitled to compel a set-off as prayed by them, and that the rent for which the judgment was obtained had not been paid during the copartnership dealings of the parties, and that such a defense is not open to complainants upon this record.

"Defendant Tabor was an attorney at law, and the defendant who recovered judgment.

"As assignee simply, he would take the chose in action assigned to him subject to all equities existing between the parties at the time of assignment.

"As attorney for defendant, he would be entitled to a lien on the judgment found due to his client, to the extent of his taxable costs at least, subject to no right of set-off against the same; and as, under our statute, an attorney is permitted to agree with his client upon the measure of his compensation, that agreed sum stands as a charge or lien on the judgment obtained by him, in the same manner as taxed costs, and the attorney is regarded as an equitable assignee of so much of the judgment as is necessary to satisfy the compensation agreed upon,—a doctrine which is quite different from that adopted in several of the states.

"The exact question came up in *Rooney v. Second Ave. R. R. Co.*, 18 N. Y. 368, in which case it appeared that it had been agreed between the plaintiff and his attorney that the latter should commence and prosecute an action to its final termination, without fee, and upon his own risk, and upon his final success he should receive for his services one-half the recovery; and, if the amount should not exceed $600, the taxable costs also. He recovered a judgment of $1,179.17, and it was held that he had a lien on the judgment for the amount of his agreed compensation.

"In *Ely v. Cooke*, 28 N. Y. 365, it appeared that the attorney had made an agreement with his client that he should

receive, as compensation for carrying on the defense of an action prosecuted to set aside a judgment held by that client, the whole amount of the recovery; and the court of appeals, following the case last cited, held that it was lawful to make such an agreement, that it was based upon a good consideration, and that after it was made the client had no interest left in the judgment, and another judgment held by a creditor of the client could not be set off against it.

"In *Perry v. Chester*, 53 N. Y. 240, it was held that a defendant had the right to assign to his attorney the prospective costs against his adversary in consideration of the services to be rendered by the attorney in earning such costs; and that, where such a transfer had been made, in case the defense was successful, the claim of the attorney to a judgment for the costs could not be defeated by setting off against them a prior judgment obtained by the plaintiff against the defendant.

"In *Wells v. Elsam*, 40 Mich. 220, which was a cause in equity to obtain an offset of judgments, our Supreme Court used this language:

"'Although some courts have not deducted the costs of attorneys, yet such we think was the better practice, and the statute is plainly designed to enforce that principle. Compensation by agreement has now taken the place of taxed costs, and this has been expressly recognized in New York under a similar statute.'

"The Court then cite *Rooney v. Second Ave. R. R. Co.*, which I have already referred to, and which they approve in the following language:

"'We think this decision is in strict accordance with the manifest purpose of the statute, and we do not think it necessary to discuss the many discordant cases which have been cited on the general practice. The statutory principle will clearly protect these defendants, and it is no more than justice requires. There is no averment in the bill that after any proper claims of the attorneys were satisfied the balance left would exceed $100. Assuming, therefore, that under our statutes there is any propriety in resorting to equity without special and peculiar reasons, we think there is no ground on which the present bill can be sustained.'

"In examining this case, I have noticed that the citations from New York cited by counsel for complainants, and in an early opinion, in the case referred to, by myself, were before the Supreme Court, in the brief of counsel, but that they did not meet the approval of that Court.

"In *Perry v. Chester*, already referred to, the court of

appeals used language which I consider applicable to the case at bar, and say :

> "'Putting the case in the most favorable view for the defendant, the question here is whether a party having a judgment against another is entitled to set it off against a judgment for costs in a subsequent litigation commenced by such party, against the rights of the attorney who obtained the latter judgment, which rights were secured by an express contract in writing transferring such costs to him before any judgment was rendered. There is clearly no legal right, for the reasons before stated, and I am unable to appreciate any superior equity. Such contract is valid, and, if founded upon professional services to be rendered in the case, the consideration is ample and meritorious. If such a transfer was denied to a party, he might be practically deprived of the right of interposing his defense. A person sued has a right to secure his attorney with the prospective costs against his adversary, in consideration of the services to be rendered in earning such costs.'

"And our own Supreme Court have expressly held that attorney and client may agree upon compensation to be paid him, and that the sum so agreed upon remains as a lien on the judgment in place of taxed costs.

" Now, it is not disputed in this case but that the defendant Tabor rendered the services claimed by him, and paid out the sums by way of disbursements charged in accordance with the agreement with Robinson. Nor is it claimed that his charges were or are unreasonable. And the testimony shows that, at the time he made the agreement, it had not been ascertained that Robinson was in debt to complainants, and, indeed, the contrary was at that time urged and insisted upon ; and if it had not subsequently happened that the assets of the firm realized so much less than their apparent cash value, as shown by the inventory taken by the parties, it would be doubtful whether any balance would have been due the complainants from Robinson.

" I can see, therefore, no way under the law which would authorize a decree setting off complainants' decree against defendant's judgment; and, as the lien of defendant Tabor extended to the whole judgment obtained by Robinson against complainants, it is not at all clear that satisfaction of that judgment should have been suspended or delayed until the unliquidated claim of the complainants could be ascertained and a balance struck as between themselves and Robinson. *Mohawk Bank v. Burrows*, 6 Johns. Ch. 317 ; *Ainslie v. Boynton*, 2 Barb. 258. It was ordered restrained, however, because it was deemed just that complainants

should have their day in court upon their case as it might be made upon the proofs.

"The doctrine of the cases last cited, as well as of *Duncan v. Lyon*, 3 Johns. Ch. 360, is to this effect: that, though one judgment may be set off against another, a demand on one side raised to a debt certain, and an unliquidated debt on the other, will not warrant an injunction restraining the collection of the one until the other can be reduced to a certainty, and in condition to be set off.

"Assuming, however, that the defendant Tabor stands before the court as a mere assignee of a chose in action, how does the complainants' case stand, admitting, for argument's sake, the propriety of enjoining the satisfaction of the Robinson judgment until the complainants should obtain the decree which they ask to set off in this case?

"In *Lockwood v. Beckwith*, 6 Mich. 173, it was held that the existence of mere cross-demands is no ground upon which an equitable set-off may be awarded, and that, although there is much doubt thrown over this branch of the law, and much conflict of authority regarding it, the true rule is that the debt must have existed as a mutual credit at the time of the assignment of it to authorize a set-off as against the rights of the assignee; in other words, that the equity must have attached to the demand, and not to the person of the debtor.

"And the Court in that case referred to 2 Story, Eq. § 1435, where it is laid down that,—

" 'Independently of the statutes of set-off, courts of equity, in virtue of their general jurisdiction, are accustomed to grant relief in all cases where, although there are mutual and independent debts, yet there is a mutual credit between the parties, founded, at the time, upon the existence of some debts due by the crediting party to the other. By mutual credit, in the sense in which the terms are here used, we are to understand a knowledge on both sides of an existing debt due to one party, and credit by the other party founded on and trusting to such debt as a means of discharging it.'

"In *Hale v. Holmes*, 8 Mich. 37, the Supreme Court held that in that case there was no mutual credit, and that insolvency alone is insufficient, even in case of positive indebtedness, to authorize an equitable set-off, and observed that this was expressly held in *Lockwood v. Beckwith*.

"In construing the contract of the parties to this litigation, the Supreme Court held that the covenant to pay rent to Robinson was independent and not dependent, and it is manifest that there was no mutual credit. The rent was to be paid to Robinson at the end of each year. The advancements

made by Kinney, Adams & Co. were to be taken out of the assets of the copartnership, and not paid by Robinson in person.

"The parties did not contemplate a loss in their business, but a profit, and there is no testimony which establishes any subsequent agreement or understanding, before or after the judgment was obtained by Robinson, which could affect the rights of the defendant Tabor, that the sums due Robinson for rent should be set off as against any sum it might be found that he owed the copartnership upon a settlement of its affairs. Indeed, as I have before said, Robinson has always insisted that he was not in debt to complainants at all.

" The equities of the defendant Tabor as to the indebtedness existing from Robinson to him prior to the assignment by Robinson were at least equal to those of the complainants, and the services rendered in the litigation, which Robinson was fully authorized to defend, would also seem to give him equal equities, as to them, on that account.

"The doctrine laid down by the Supreme Court, as expressed in 6 and 8 Mich., has been repeatedly approved, and the case of *Ledyard v. Phillips*, 58 Mich. 204, decided by that Court, is in consonance therewith, and not inapplicable in many of its features to the case in hand.

"I am aware that in *Gay v. Gay*, 10 Paige, 374; *Davidson v. Alfaro*, 80 N. Y. 660; *Lockwood v. Bates*, 12 Amer. Dec. 121,—a different result from that reached by our Supreme Court, and from the views expressed in this opinion, in some respects, was arrived at; but, as I said before, those cases were cited in the *Elsam Case*, and did not meet the approval of our Court.

" The claim made in complainants' bill, that the amount recovered by Robinson was in reality paid by complainants to him before that judgment was recovered, cannot avail them. As a matter of fact, his claim for rent was not paid, and, if it had been, it was a proper matter of defense in the action at law. Complainants were not prevented in that suit from setting up that defense. It was their privilege to do it, and they cannot now be heard to raise the question. It is *res judicata*."

The learned judge dismissed the bill of complaint.

In this Court it is again urged that the claim of defendant Robinson could not be set off in the action at law, for the reason that it now appears that he had disposed of the claim to Tabor, a third party ; and, in support of this position, the following provision of the statute is cited :

"It must have existed at the time of the commencement of the suit, and must then have belonged to the defendant." How. Stat. § 7365, subd. 4.

It will be seen that the statute fixes the time when the right of set-off accrues, at the commencement of suit. The suit was commenced by the filing and service of declaration on the defendant, Robinson, on or about the seventeenth day of March, 1874; and, the defendant then owning the claim against the plaintiffs in his own right, he was not prohibited by the statute from interposing it as an offset. He did not assign it to Tabor until the twenty-third day of March. Tabor, however, took the assignment of the claim subject to all the defenses, legal and equitable, of the complainants, who were plaintiffs in that suit.

The real difficulty consists, not only in the fact that the question has been litigated in the lawsuit, but in the want of mutuality between the demand due to Robinson and the unliquidated demand claimed to be due from Robinson to the firm of "O. Robinson & Co."

We have held frequently that such demands cannot be set off. *McGraw v. Pettibone*, 10 Mich. 530; *Adams v. Bradley*, 12 Id. 346; *Elder's Appeal*, 39 Id. 474; *Learned v. Ayres*, 41 Id. 677; *Gardiner v. Fargo*, 58 Id. 72; *First Nat. Bank v. Barnum Wire Works*, Id. 129; *Ledyard v. Phillips*, Id. 204.

The decree of the circuit court dismissing the bill of complaint must be affirmed, with costs.

CAMPBELL, C. J., concurred. MORSE, J., did not sit.

SHERWOOD, J. (*dissenting.*) I cannot agree in the conclusion reached in the opinion filed by my Brother CHAMPLIN in this case.

If the complainants are entitled to relief, it must be upon the facts stated in their bill.

Now, what are those facts? They are, substantially, that the complainants have a good and valid claim, arising upon contract, against the defendant Robinson, past due, of

several thousand dollars; that the said defendant Robinson
has a claim by way of judgment against the complainants of
between $600 and $700, and said defendant is insolvent;
and that unless the complainants are allowed to set off their
claim to the extent of the defendant's they will lose it en-
tirely. They ask that the collection of the judgment against
them may be enjoined until their claim can be put in judg-
ment and the proper offset made.

These facts certainly present an equitable claim on the part
of the complainants against the defendants, and a failure of
proceedings at law to furnish the adequate remedy. Then
why should not equity afford them the relief they pray ?
As the decree now stands, and as my brethren propose to af-
firm it, the complainants will be compelled to pay to the in-
solvent defendant $700, while he owes them more than twice
that amount. I fail to see any reason why the offset should
not be made. Mr. Tabor, as assignee of defendant's claim,
acquired no interest which could change the equities exist-
ing between complainants and defendant Robinson. This I
understand to be conceded by my brothers, but they place
their affirmation mainly upon the ground that the facts have
once before been litigated, " and the want of mutuality be-
tween the demand due to Robinson and the unliquidated de-
mand claimed to be due from Robinson to the firm of O.
Robinson & Co."

I confess I am unable to comprehend the argument that
the question presented has been litigated. There is no ques-
tion but that the defendant Robinson owed the complainants
a debt for goods sold, nor is there any question but that he
had a claim against the complainants.

The complainants brought suit against the defendant Rob-
inson, and the latter obtained, by way of offset in said suit,
the judgment which the complainants now ask to have off-
set against the claim the defendant Robinson owes them,
amounting to $2,000. Certainly the claim for which the de-
cree was rendered against the defendant Robinson was not
litigated in the suit at law. It could not be, because it in-
volved the investigation of partnership claims. The question

involved is simply one of equitable set-off after the rights of the parties have been fully ascertained. The defendants' claim was ascertained by the judgment, and the complainants' by the decree. There is no chance for the litigation of either upon the merits in this suit.

It is said, however, that an appeal has been taken from the decree, and that the same is now pending. If this is true, I am unable to see how it can affect the equities of the present case. The equities appearing in the bill remain until it is finally determined whether or not the defendant Robinson owes the complainants, and to what extent ; and until that time the proceedings to collect Robinson's judgment should be stayed. The record shows the claim of the complainants as well before as after decree ; and the right to set off claims has always been regarded as one of equitable cognizance; and in what cases and under what circumstances it should be allowed or enforced is peculiarly, in my judgment, within the province and jurisdiction of a court of equity ; and set-off should always be allowed and enforced whenever the just and equitable rights of the parties will be promoted thereby.

The rules limiting the cases and circumstances under which set-offs may be allowed in actions at law should not control the action of a court of equity upon the subject, but the equitable rights of the parties under the circumstances of each particular case should govern. This view may not be in accord with some of the cases, but I am sure it is with justice, and courts of equity should be governed by nothing else.

It is also claimed that there is want of mutuality between the demands of complainants and Robinson. I am aware there is much talk and refining upon the subject in some of the cases, but harmony in the decisions is not desirable where it can only be obtained at the sacrifice of the equitable rights of parties in a court of chancery. There is a natural equity in the doctrine that cross-demands may be set off against each other, and that only the balance should be required to be paid by the delinquent party ; and I fail to discover why the equity to have the set-off made is any stronger in the case

of mutual claims, than where they are not mutual, provided the indebtedness held by each is honest and *bona fide*.

Lord Mansfield announced the true doctrine upon the subject in the following language:

"Natural equity says that cross-demands should compensate each other by deducting the less sum from the greater; and that the difference is the only sum which can be justly due." *Greene v. Farmer*, 4 Burr. 2220, 2221; Story, Eq. Jur. § 1433.

"It is true, where the court does not find a natural equity, going beyond the statute, the construction is the same in equity as at law;" so, as to mutual debts and credits, equity follows the law. But the application of the doctrine of natural equity in cases of set-off is not affected by the statutes upon the subject. It is to cases where the demands are not mutual that this doctrine applies, and, in my judgment, it should have been applied by the circuit judge in this case. By so doing the rights of all the parties are regarded and protected; while an affirmance will be equivalent to compelling the complainants to pay their indebtedness a second time. I can never assent to a judgment fraught with such injustice, as I understand it.

Before the statutes of offset were enacted, equity would interfere under a proper showing of the facts, and prevent the enforcement of a claim; and I have yet to learn that those statutes have limited in any respect the jurisdiction or power of a court of equity to relieve in such cases. I think the decree at the circuit should be reversed, and a new decree entered in this Court, as prayed in the bill, with costs of both courts.