# JUNE TERM, 1887.

WARREN D. KINNEY, FRANKLIN B. ADAMS, AND JOHN IHLING v. OREN ROBINSON.

[See 52 Mich. 389; 62 Id. 517.]

*Partnership—Equity—Injunction—Accounting.*

In this case the majority of the Court reverse the decree below, and dismiss complainants' bill. For a full history of the controversy, see 52 Mich. 389, 62 Id. 517, and the dissenting opinion of Justice SHERWOOD.

Appeal from Van Buren. (Mills, J.) Argued January 4, 1887. Decided June 9, 1887.

Bill for a partnership accounting. Defendant appeals from a decree granting the relief prayed for. Decree reversed and the bill dismissed. The facts are stated in the dissenting opinion, and in the cases referred to in the headnote.

*George W. Lawton*, for complainants.

*Lester A. Tabor*, for defendant.

CAMPBELL, C. J. In this case the balance found due complainants was based chiefly on an allowance in their favor of all the losses upon the assets which went into their hands. I do not think they are entitled to any such allowance. On the dissolution of the firm they had no exclusive right in the assets, and, if they chose to bring the concern into chancery, it was also their duty to see, as far as possible, that the proceedings be fairly carried through. By the order obtained in

April, 1873, they got possession of the assets without complying with the conditions of the order, and their possession was such that any unauthorized disposal would be at their own peril. I do not think it is satisfactorily shown that Robinson ever authorized them to make such disposition as they did make. Neither do I think that their private books can be allowed any force in the controversy. It was their duty to keep these matters in shape to be readily investigated by the court, and to act diligently. There never was any obstacle to the transfer of the cause to another circuit, if the judge was incompetent to sit, or to apply after such transfer, or before it, if another judge should be called in, for any new order necessary. They saw fit to go on without any regard to the order under which they got the property, and without paying any heed to defendant's interests. I think they are now precluded from relying on their irregular and unauthorized conduct. I can see no foundation for any decree in their favor. There may be some difficulty in giving affirmative relief to Robinson, and we are not prepared to do so; but I do not think complainants should have any recovery against him.

The decree should be reversed and bill dismissed, with costs against complainants. This seems to us as near complete justice as it is possible to come on the facts.

CHAMPLIN and MORSE, JJ., concurred.

SHERWOOD, J. (*dissenting*). I cannot agree with my brethren in this case.

From the record it appears that in 1871 the complainants resided in, and were carrying on the business of hardware merchants at, the village of Lawton, in the county of Van Buren. The defendant lived in the same place, and was carrying on a small foundry, in connection with a blacksmith shop.

On the sixteenth day of January of that year, the bill of complaint avers, the parties entered into an agreement with

each other to form a copartnership under the name and style of O. Robinson & Co., wherein each of said parties was to furnish one-half the capital, and share equally in the profits. The terms of the copartnership are more particularly mentioned, and the business to be carried on described, in the following written instrument, made and executed by the parties at the time, and which is as follows:

"This agreement, made this sixteenth day of January, 1871, between Oren Robinson, of the village of Lawton, Van Buren county, State of Michigan, of the first part, and Kinney, Adams & Co., consisting of Warren D. Kinney, John Ihling, and Franklin B. Adams, of the State, county, and village aforesaid, of the second part, *Witnesseth,* that the said Oren Robinson, in consideration of the covenants on the part of the party of the second part hereinafter contained, doth covenant and agree to and with the said Kinney, Adams & Co. to rent or lease to them the full, equal, and undivided one-half of lot No. five (5), block No. one (1), Dodge's addition to the village of Lawton, together with the buildings, machinery, tools, patterns, and everything thereto belonging or in anywise appertaining, and together with all territory, consisting of Cass, Berrien, St. Joseph, and Van Buren counties, for the manufacture and sale of the revolving mould-board plow, and other agricultural implements, and shop work, etc., for two years from the date hereof, for the sum of two hundred and fifty dollars, payable at the end of the first year, and three hundred dollars for the second year, payable at the end of the second year; said Oren Robinson to put in his time, and Kinney, Adams & Co. to put in equal time, and run the foundry and shop for the time specified to the best advantage.

"The said Kinney, Adams & Co. to buy of Robinson one-half the stock now on hand, at cost; and the said Robinson, at the end of the two years, to buy of Kinney, Adams & Co. the one-half of what stock there is then on hand, at cost; the said Kinney, Adams & Co. to furnish capital along, as the same may be needed, to the amount of $2,000, and at the end of the two years to draw out the amount of capital put in by Kinney, Adams & Co.

"The said Robinson to pay Kinney, Adams & Co. interest at 10 per cent. per annum on one-half of what they, Kinney,

Adams & Co., put in, and divide the profits, if any, equally between the said Robinson and Kinney, Adams & Co.

"If any new machinery or tools, etc., are put in the shop, said tools and machinery to belong equally to the said Oren Robinson and Kinney, Adams & Co. at the end of the two years.

"Kinney, Adams & Co. reserving the right, and the said Oren Robinson agreeing to sell to Kinney, Adams & Co. the full, equal, undivided one-half of lot five (5), block No. one (1), Dodge's addition to the village of Lawton, together with all the hereditaments and appurtenances thereunto belonging, with all that reverts to him at the expiration of this lease, for the sum of $2,500, payable in three equal annual payments, with interest, provided that Kinney, Adams & Co. conclude to buy the property at the end of the first year, and, in case they do buy at that time, then this lease for the second year to be null and void and of no effect; Kinney, Adams & Co. reserving the right to buy or not, as they may elect."

The bill further avers that the business of the copartnership was carried on until the sixteenth day of January, 1873, when the relation expired and the partnership was dissolved, and whatever has been done since has been for the purpose of closing up the affairs of the firm.

That an inventory of assets and liabilities has been made, and it appears therefrom that the said O. Robinson & Co. hold in notes and accounts against divers persons, the sum of $2,707.66, of which $573.83 is against the said Robinson, being moneys due or to become due to the firm, and that the stock and tools belonging to the firm amount to $3,327, and that the total of said assets is $6,034.61; that the firm's indebtedness is $5,649.72; that, of said indebtedness, $5,622 80 is owing to complainants, in which amount there is included $2,000 mentioned and provided for in the written agreement; and that the $573.83 is due from Robinson to the firm.

The bill further avers that the complainants are each individually solvent, and able to meet all the liabilities, and

liquidate them, of said firm, but that Robinson is insolvent; that complainants are anxious to settle the affairs justly, but that Robinson refuses so to do; that the stock mentioned in the agreement is still on the premises -and in possession of Robinson, and he claims to own the same, with the right to dispose thereof, and that he has disposed of some, and appropriated the avails thereof to his own use; that he threatens to dispose of the stock belonging to the firm, and complainants believe defendant intends so to do, and will unless restrained by the court.

The bill prays for an injunction, and for an accounting, and that whatever may be ascertained to be due to complainants may be decreed to be paid by defendant; asks for the appointment of a receiver, and that Robinson deliver up to the receiver the property belonging to the firm, and all books, accounts, papers, and vouchers in his possession belonging thereto.

The defendant answered the bill, admitting the copartnership and the business done thereunder, and the terms upon which it was done, and the dissolution, and the taking of the inventory of the assets; but says that he never had the items of, or an opportunity to inspect, the same, and does not know whether the accounts and notes amount to as much as claimed by complainants or not; that he has no knowledge that he owes the firm the amount of money claimed in complainants' bill.

Defendant further says he has no knowledge of the value of the stock and tools belonging to the firm, or of the assets thereof, or as to the amount of said firm's indebtedness, or as to the amount he owes the complainants, being what is charged in the bill of complaint. Denies that complainants are each solvent, on his information and belief, and avers that he is "able to meet all his obligations and debts." Denies complainants' willingness to settle. Admits that a large amount of stock is in his possession, and avers that

complainants have also control or possession of a large amount of said stock. Says complainants have refused to give him a copy of the firm accounts, or permit him to see the books they kept thereof, claiming that they are their private books.

Defendant further avers that, if complainants put into the firm more than $2,000 capital stock, it was without his knowledge or consent, and that, if more was put in, it was in consequence of the neglect of complainants to make collections for the firm which they should have done; that what complainants put in were goods from their store, not at cost price, but at a price including large profits, whereby the defendant was cheated and defrauded.

Defendant further avers that the books of the firm were kept by complainants, and he has been denied access to them.

The answer prays the benefit of a demurrer for want of equity. Preliminary injunction was issued restraining defendant from meddling with any of the property or disposing of the same.

The answer was filed March 24, 1873. On the ninth of April thereafter, on motion made by defendant to dissolve the injunction, the circuit judge made an order modifying the injunction, requiring the complainants to deposit the copartnership books and accounts for 20 days with the register of the court, and requiring each party to file a bond in the sum of $6,000, conditioned to account to the register of the court, and pay over to him for the benefit of the firm, all moneys belonging thereto, or received by either of them on sales of assets, or on collections made by either; and defendant was to have the privilege of taking for his own use such of the personal property as was in his hands or under his control, accounting therefor to the register for the same at not less than the cost price thereof; and none of the assets were to be sold by either party for less than cost price.

The bond was never given by the complainants, and it is doubtful whether any was given by defendant. The order, however, modified the injunction in several respects. No money was ever paid to the register by the defendant.

It appears the complainants did not buy out Robinson at the end of the first year, nor did Robinson buy half of the stock on hand at the end of the second year, as provided the parties might by the contract entered into between them. The company's chattel property on the eighth day of May, 1874, such as was left, was removed from the foundry to a building, and kept by itself until sold.

In 1876 the testimony in the case was taken, and proofs were closed April 11, 1876. The proofs show a statement of balances made by the acting commissioner, and it is claimed that, upon the testimony, the cause was submitted to the circuit judge for decision, but the then circuit judge soon thereafter died, and that his successor failed to render any decree during his term of office, and that the case finally fell to Judge Mills for final disposition.

During the foregoing proceedings, Kinney, Adams & Co. brought a suit at law in the circuit court for the county of Van Buren against Robinson, for an account they had against him. The account was verified under the statute. Robinson filed his plea, and claimed, by way of offset, an amount far exceeding the plaintiffs' demand, composed of items made up of the claim of defendant for the one-half of the defendant's stock, also for the rent they were to pay defendant for premises used in the partnership business, under their articles of copartnership. The plaintiffs claimed that the obligations to pay, relied upon to support defendant's set-off, were part of the partnership business, and could only be adjusted in the partnership settlement. This Court, on an appeal from the circuit judgment, affirmed the same, holding otherwise. The judgment in that case was for

the sum of $607.54, and was affirmed in this Court on the fifteenth day of January, 1884. See 52 Mich. 389.

Nothing more seems to have been done in the present case after it had been submitted to the court until 1883, when further testimony was taken on both sides, from time to time, until 1885. A reference was also ordered by the circuit judge to J. C. McLain, Esq., for an examination of the accounts of the firm and parties, and a report of the balances as they should appear by the testimony. McLain made a report wherein he found due to Kinney, Adams & Co., from the defendant, $1,973.76. Of this sum quite a large amount was allowed to complainants as interest, and the report was objected to by defendant's counsel, and the special commissioner was directed to make a supplemental report.

In the meantime, the decision in the case at law having been adverse to complainants, they filed on the seventeenth day of January, 1884, a supplemental bill, setting up the facts upon which the claim arose wherein the judgment at law had been rendered, and obtained from the court a writ enjoining the collection of the judgment. The circuit judge, on the hearing of the supplemental bill, dismissed the same, and his decree was afterwards affirmed by this Court. I did not concur, however, in the affirmance.[1] Subsequently, and on the fourteenth day of May, 1884, McLain's report was set aside, and the additional testimony ordered to be taken in open court; and upon the hearing of this cause the testimony thus taken upon the supplemental bill was to be considered.

Upon the hearing in January, 1886, at the Van Buren circuit, the circuit judge rendered a decree, wherein he finds that the copartnership was formed between the parties, and the terms of which were put in writing by them, and continued for two years, upon the terms stated in complainants'

---

[1] See *Kinney v. Tabor*, 62 Mich. 517.

bill, and that the defendant caused the goods and chattels specified in the contract to be inventoried as therein provided, and that they were of the value of $849.99, and then proceeds as follows:

"That the said firm of O. Robinson & Co. occupied the premises described in said contract for and during the two years, at the rental therein specified, and that the complainants furnished the said firm of O. Robinson & Co. the said sum of two thousand dollars provided for in said contract, and that, the exigencies and business of said firm of O. Robinson & Co. requiring further and other money to be used in their business, the said complainants, with the knowledge and concurrence of the said defendant, provided the said further sum of money so required as the same was needed, and that such other and further sum of money amounted to $6,044.09, and was so provided by said complainants; and that, the business of the said O. Robinson & Co. proving unprofitable, the assets of the firm were insufficient to repay the capital so paid in by said parties, and the debts and obligations of said firm; and a full accounting of all the business and affairs of said parties in respect to said firm of O. Robinson & Co. having been had, and a statement of their several accounts having been made, and it appearing that there is now due from the said defendant to said complainants the sum of $2,070.33, and that the equity herein is with the said complainants, it is therefore ordered, adjudged, and decreed that the defendant pay to the complainants the said sum," with interest, etc.

The defendant asks a review of the case in this Court. After a careful examination of the record, I am satisfied the decree should not be disturbed. The testimony in the case consists largely of the accounts appearing upon the books intended to show the firm business as sworn to by the witnesses. These books are an invoice book, foundry blotter or cash book, journal, and ledger. The books of the complainants, in which are charges and credits with O. Robinson & Co., and accounts with divers other persons, were also offered in evidence.

It is claimed by counsel for complainants that since the year 1876, and while the company books were in the hands

of the register of the court, the accounts have been altered; that sums have been raised in such manner as to show the liability of complainants to be $1,927 more than the actual indebtedness. The testimony strongly tends to show such to be the facts. Nothing of this kind appears to have been observed by either party previous to 1883. The subsequent testimony was taken in open court, where the testimony and its credibility could be best passed upon, while the witnesses were present and under the eye of the court; and the circuit judge's conclusions upon such facts, and under such circumstances, should not be reversed except upon most satisfactory reasons, such as I have not found to exist in this case.

The first complaint made by counsel for defendant is that the court admitted the private books in evidence to establish the correctness of the partnership account between these parties. The partnership books, it was claimed by complainants, had been tampered with while out of their possession, —had been surreptitiously changed,—and they had the right to show that fact by any testimony competent for that purpose; and, while some of the testimony offered upon this and other subjects might not fall strictly within the rules of evidence, there is nothing showing or tending to show that the learned circuit judge regarded such testimony to any extent whatever in making up his decree. Nothing, therefore, prejudicial to the rights of defendant is shown upon that point.

There was but little difficulty in ascertaining the amount of the assets of the firm at the time of dissolution, stating the value thereof at cost prices; in fact, such an inventory was made; and the liability of the firm was as easily ascertained. And it is claimed by counsel for defendant that the complainants should be compelled to account for and be charged with all the personal property that came to their possession after the partnership was dissolved, at cost prices,

even though they were unable to sell the same for more than one-tenth the cost price; and this is claimed on account of the manner of complainants' taking possession, and because of the order of the circuit judge modifying the injunction.

Either of the copartners had a right to the possession of the personal property until sold or until the court interfered. In January, 1873, the defendant was enjoined by the order of the circuit judge, in chancery, from in any way intermeddling with the firm property, and thereupon a building was procured, and the chattel property belonging to the firm was placed into it by the complainants, and thereafter controlled by them. I can see nothing wrongful or even improper in the complainants' possession of the firm chattel property, and doing what they did with it. Certainly it should be cared for by some one.

The receiver prayed for in the bill of complaint does not seem to have been granted, and I find nothing in the printed record indicating that either party moved for the appointment.

On the ninth of April, as before stated, the defendant's motion to dissolve the injunction was decided, and much is claimed by defendant's counsel for the order entered on this motion. The relief granted upon the motion did not change the *status* of the property. Neither was the injunction to be modified as to the custody or disposition of the property, except that, if the defendant should file a bond in accordance with the terms of the order, he should then be at liberty to sell the plows, plow-points, castings for plows, and the coal belonging to the firm, but should also be required to make an inventory thereof, and of such of the property as he might choose to take for his own use, provided such property sold or thus taken should be at cost price. Defendant never filed the bond, and therefore could not avail himself of the privileges of the modification of the injunction, and he neither gained nor acquired anything therefrom.

The order also contained a provision that the complainants should not sell the property of the firm at less than cost price. This condition of sale by either of the parties was, by the terms of the order itself, subject to be waived by the consent of the parties, and such consent was not required to be in writing.

It will thus be discovered that the action of the court clearly contemplated that either of the parties might sell the copartnership chattel property, and they were expressly permitted to do so, at cost, and at a less sum if consented to by the parties. And I am unable to find any testimony to the effect that the court, or either of the parties, ever anticipated a sale of any of the property at auction. At the time the modifying order was made, the defendant had left the county of Van Buren, but was represented by two attorneys, both competent practitioners and honorable men. At no time do we find the defendant or his counsel importuning the court, or even requesting the complainants, to sell the copartnership effects at auction.

The late Judge Lawton, of Lawton, was the solicitor for the complainants from the commencement of this case until it was finally submitted to this Court on the present record. Comstock & Rowland were the solicitors for the defendant until Mr. Comstock was appointed judge in the Van Buren circuit. The record shows that Judge Comstock, while acting as agent or solicitor of the defendant, "managed the case for defendant almost entirely." And Judge Lawton's testimony is to the effect that, after said order modifying the injunction was made, the complainants gave a bond; and that before any of the company's property, except a few plow trimmings, had been sold, and part of those by Mr. Robinson, he made an agreement with Judge Comstock, who acted at the time for the defendant, and at his request, that the property of the company then on hand should be sold as speedily as possible for the best price that could be obtained therefor,

even though less than cost; and that it was his best recollection that the agreement was put in writing, but, being unable to find it, he would not testify positively, but that both parties acted upon it, and that the defendant tried to make sales thereof; and I do not think this testimony is successfully impeached or met by the defendant or his testimony. It necessarily follows, from what has been said, that there was nothing illegal or unjust in the manner the complainants acquired the possession and made sale of this firm property, nor did the complainants violate any order of the court in so doing.

Judge Comstock, though circuit judge at the time the stipulation was made, was not incapacitated thereby from giving the assent for Mr. Robinson to making sale of the property below cost. The complainants in this case never acted as receivers for the firm, nor was their action and liability governed by the rules applicable to that position. They acted simply as partners closing up the business of a firm after dissolution, and I have been unable to discover from this record that they have not acted honestly and in good faith.

I do not feel that this Court is called upon to give in its opinion the details of the computations it makes in arriving at its conclusion in this class of cases, but after a careful examination of the exhibits, together with the testimony relating thereto, I have no doubt but that the equitable rights of these parties would require that the balance found by Judge Mills should be increased by several hundred dollars; but this cannot be done, the complainants not having appealed.

The rule urged as applicable to the complainants by counsel for the defendant, that it was their duty to sell the firm property at auction, has no application whatever to the circumstances of this case. The complainants' right to sell the firm property came from their interest in the same as part

owners, at law, and not from any action of the court, and in equity the whole interest belonged to them, as the proof, I think, clearly shows the defendant was insolvent at the time.

It is claimed by defendant's counsel that the complainants appropriated all the proceeds of the partnership effects. This was both right and equitable, so long as the defendant owed the complainants over $2,000 more than the defendant's half of the assets claimed to have been appropriated.

It is quite immaterial as between these parties whether the complainants ever presented to the court a statement of the sales they made of the partnership effects, or of the amount they brought, so long as an account was kept of the transactions, and the defendant was fully advised thereof, which seems to have been this case. I fully agree with Judge Mills, that the equities are with the complainants. I can take no other view of the case, as I have examined it, and I think the decree should in all things be affirmed, with costs.